IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

ECLIPSE IP LLC,

          Plaintiff,

    v.

MARTEN TRANSPORT, LTD.,

          Defendant.

Case No. 2:15-CV-527

PATENT CASE

---

## DEFENDANT MARTEN TRANSPORT, LTD.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

---

## MOTION

Defendant Marten Transport, Ltd. ("Marten"), by and through its attorneys, respectfully moves the court, pursuant to 28 U.S.C. § 1404(a), for an order transferring the venue of this action to the United States District Court for the Western District of Wisconsin.

This motion is supported by the Declaration of Elijah B. Van Camp, and attached exhibits, and the Declaration of Brent Johnson, filed herewith.

## INTRODUCTION

On April 20, 2015, plaintiff Eclipse IP LLC ("Eclipse") filed its Complaint for Patent Infringement, alleging that Marten infringes U.S. Patent No. 7,876,239 ("the '239 Patent") and U.S. Patent No. 7,479,899 ("the '899 Patent") (collectively, "the patents-in-suit"). Dkt. 1, p. 2. However, there is no connection between Eclipse's patent infringement lawsuit against Marten and the Eastern District of Texas. Instead, relevant witnesses and evidence relating to Marten's "computer-based notification systems and methods" are located in the Western

District of Wisconsin.  Dkt. 1, pp. 2-3.  Meanwhile, Eclipse is a Florida company with no connection to the Eastern District of Texas other than its decision to file litigation there.

Marten respectfully requests that this case be transferred to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

### I.     ECLIPSE

Eclipse is a Florida limited liability company with a principal place of business at 711 SW 24th, Boynton Beach, Florida 33435.  Van Camp Decl. Ex. 1.  Eclipse's manager, Pete A. Sirianni III resides at 115 NW 17th Street, Delray Beach, Florida 33444.  *Id.*  Eclipse also maintains an office at 370 Easton Road, Hermitage, Pennsylvania 16148, which is another residence owned by Mr. Sirianni.  *Id.* Ex. 2.

The only inventor listed for the '239 Patent and the '899 Patent is Scott A. Horstemeyer, a patent attorney who lives and works in Atlanta, Georgia.  *Id.* Exs. 3, 4, 5.  Mr. Horstemeyer and his law firm, Thomas Horstemeyer, LLP (formerly Thomas, Kayden, Horstemeyer & Risley, LLP), which has its offices in Atlanta, Georgia, prosecuted the '239 and '899 Patents in the United States Patent Office.  *Id.*  Mr. Horstemeyer appears to have no presence in or connection to the Eastern District of Texas.

Based on information and belief, Eclipse is a Non-Practicing Entity ("NPE") that was formed in December 2010, which has no permanent employees

or business operations, and has no presence in this District.  *Id.* Ex. 6.  Eclipse

does, however, have a significant litigation presence throughout the United States,

having filed over 160 patent infringement lawsuits since May 2011.  Van Camp

Decl.

 Eclipse has litigated numerous lawsuits involving one or both of the same

patents-in-suit as in this case, including in the Northern District of Illinois, the

District of New Jersey, the Central District of California, the Northern District of

California, the District of Delaware, the Eastern District of Michigan, the District

of South Carolina, the Northern District of Georgia, the Northern District of West

Virginia, the Southern District of West Virginia, the Western District of Kentucky,

the Western District of North Carolina, the Southern District of Florida, and the

Eastern District of Texas.  *Id.*

 Eclipse currently has litigation pending involving at least one of the

patents-in-suit in the District of New Jersey, the Central District of California, the

Northern District of California, the District of Utah, and the Eastern District of

Texas.  *Id.*  In the District of New Jersey alone, Eclipse has filed 11 lawsuits that

are ongoing and which involve the same patents-in-issue as in this case.  *Id.*

 While Eclipse does have multiple cases pending in the Eastern District of

Texas, those cases are in the early pleading stages.  *Id.*  The Court has not

construed the patent claims in any of those suits.  *Id.*  Eclipse has filed dozens of

lawsuits in the Eastern District of Texas that are now closed.  *Id.*  The court did

not make claim construction rulings in a single one of those cases.  *Id.*  Eclipse's

prior cases have consistently been voluntarily dismissed before the court could construe the patent claims at issue. *Id.*

Early dismissal before any substantive rulings has been Eclipse's litigation pattern in the many judicial districts in which it has litigated the patents-in-suit. *Id.* It has clearly been convenient for Eclipse to litigate in courts throughout the country. In fact, between May 2011 and September 2014, Eclipse filed and litigated 17 lawsuits in the Northern District of Illinois in Chicago, less than 150 miles away from the Madison courthouse in the Western District of Wisconsin. Van Camp Decl. Ex. 7. 12 of those 17 cases involved at least one of the patents-in-suit in this case. *Id.*

Although Eclipse's cases are typically voluntarily dismissed before the filing of substantive motions, defendants in two Eclipse cases – one in the Central District of California and one in the Northern District of West Virginia - filed Motions to Transfer Venue. *Id.* The courts in both instances granted the motions and transferred the cases to more convenient forums. *Id.*

## II.    MARTEN

In its Complaint, Eclipse accuses Marten of infringing two of its patents based on "making, using, offering for sale, and/or selling computer-based notification systems and methods . . ." Dkt. 1, pp. 2-3. Eclipse has not alleged what products, systems, or methods Eclipse believes infringe its patents.

Marten is a trucking company headquartered in, and with a principal place of business in Mondovi, Wisconsin, within the Western District of Wisconsin.

Johnson Decl.  Marten has been located in Wisconsin since its founding in 1946. *Id*.  Marten is incorporated in the state of Delaware.  *Id*.

Marten provides transportation and distribution services throughout the United States.  *Id*.  Marten employs several hundred employees in its Mondovi, Wisconsin facilities, including all upper management personnel and all employees with technical knowledge of Marten's communications and monitoring systems. *Id*.  The majority of Marten's employees live and work in or near Mondovi, Wisconsin.  *Id*.

Employees of Marten familiar with, and able to testify concerning the operation of its vehicles and Marten's communications and monitoring systems live and work in or near Mondovi in the state of Wisconsin.  *Id*.  Such employees include Brent Johnson, Director of Claims at Marten and Randy Baier, Vice President of Information Technology.  *Id*.  Mr. Johnson has knowledge regarding the operations, facilities, and employees at Marten.  *Id*.  Mr. Baier has knowledge regarding the technology, methods and systems utilized by Marten for communications, tracking, monitoring and reporting.  *Id*.

Files and equipment relating to communications and monitoring systems are also stored at Marten's facilities in Mondovi, Wisconsin.  *Id*.  Marten's headquarters, record-keeping facilities, and finance departments are also located in Mondovi, Wisconsin.  *Id*.

Regarding non-party witnesses, Marten expects that current or former employees of the companies Qualcomm, ID Systems, StarTrak and Edgewater

5

Technologies have knowledge regarding the computer-based notification systems and methods utilized by Marten, and may testify in this matter. *Id.* Marten contracted with these companies to provide tracking and notification systems for use by Marten. *Id.* Consequently, individuals from these companies have knowledge about the development, programming, and prior art relating to the computer-based notification systems and methods at issue in this case. *Id.*

Marten has identified individuals from these companies who may be called as non-party witnesses in this case, and who are believed to have the above-referenced base of knowledge. These witnesses include (1) Michael Hein, Director of Software Application Engineering at Omnitracs (formerly part of Qualcomm), located in San Diego, California; (2) David Arnold, Vice President and General Counsel at Omnitracs (formerly part of Qualcomm), located in San Diego, California; (3) Craig Malone, Executive Vice President for Product Development at StarTrak, located in Sterling, Virginia; (4) Michael Ehrman, Chief Technology Officer for ID Systems, located in Woodcliff Lake, New Jersey; (5) Ori Fishler, former Practice Director, Web Solutions for Edgewater Technologies, last known address in Hackensack, New Jersey; (6) Jeff Mackenzie, former Director of Technology for Edgewater Technologies, last known address in Londonberry, New Hampshire; and (7) Jim Wilcox, former Systems Architect for Edgewater Technologies, last known address in Merrimack, New Hampshire. Van Camp Decl.

All documents related to the "computer-based notification systems and methods" utilized by Marten are located in Mondovi, Wisconsin, within the Western District of Wisconsin.  Johnson Decl.  All documents related to sales and marketing of such "systems and methods" are also located in Mondovi.  *Id*. Software, hardware, and equipment relating to such systems are also found in Mondovi.  *Id*.

Mondovi is approximately 178 miles from the federal courthouse in Madison, Wisconsin, but over 1,000 miles from the federal courthouse in Marshall, Texas.  Van Camp Decl. Exs 8, 9.  Witnesses traveling from Mondovi, Wisconsin to the federal courthouse in Marshall, Texas would need to travel over 800 more miles than if they traveled to the federal courthouse in Madison, Wisconsin.  *Id*.

Marten has no offices, transport terminals, or other facilities located within the Eastern District of Texas.  Johnson Decl.  Marten has two transport terminals in Texas, both outside the Eastern District; one in Desoto and one in Laredo.  *Id*. These facilities serve only to support Marten's trucks and drivers and do not have employees familiar with the issues relevant to this lawsuit.  *Id*.  Desoto is over 150 miles from Marshall and Laredo is over 500 miles away.  Van Camp Decl. Exs. 10, 11.

Marten's only connection to the Eastern District of Texas is that its trucks travel through the District.  Johnson Decl.  Viewing data for the last five years

(2009 through 2014), the loads carried by Marten trucks in northeastern Texas have represented between 0.1% and 1.8% of the total loads carried by Marten.  *Id.*

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides that a district court may transfer a civil action to another district for the convenience of the parties and witnesses, and in the interests of justice.  A motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008).

As a general matter, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d at 1198.

The first inquiry in analyzing a motion to transfer venue is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).  If the transferee district is a proper venue, then the court weighs the relative public and private factors to determine whether a venue transfer is for the convenience of parties and witnesses and is in the interest of justice.  *Volkswagen II*, 545 F.3d at 315.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. Although these factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. *Id*. Further, no single factor has dispositive weight. *Id*.

While a plaintiff's choice of venue is accorded some deference, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech*, 551 F.3d at 1320. Rather, the plaintiff's choice of venue merely corresponds to the burden that the moving party must meet to demonstrate that the transferee venue is "clearly more convenient." *Id*. In other words, if the moving party demonstrates that the transferee venue is clearly more convenient, then the plaintiff's choice of venue carries no additional weight.

Further, when a plaintiff chooses a venue that is not its home forum, that choice is entitled to less deference. *PersonalWeb Technologies, LLC v. NEC Corporation of America, Inc.* 2013 WL 9600333, at *20 (E.D. Tex. March 21,

2013) (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)).

## ARGUMENT

### I.    VENUE IS PROPER IN THE WESTERN DISTRICT OF WISCONSIN.

This case could have properly been brought in the Western District of Wisconsin.  Marten conducts its business primarily from its headquarters in the Western District of Wisconsin, and its operational facilities and the majority of its employees live and work in the Western District of Wisconsin.

### II.    THE PRIVATE INTEREST FACTORS FAVOR WISCONSIN.

#### A.    Relative Ease of Access to Sources of Proof Favors Wisconsin.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *ContentGuard Holdings, Inc. v. Amazon.com, Inc., et al.*, Case No. 2:13-CV-1112, Dkt. 472 (Memorandum Opinion and Order) p. 14 (E.D. Tex. 2015).  Even when documents may be produced electronically, the fact "that access to some sources of proof presents a lesser inconvenience now that it might have absent recent developments does not render this factor superfluous."  *Volkswagen II*, 545 F.3d at 316.

As stated above, all documents, hardware, software, and equipment related to the "computer-based notification systems and methods" utilized by Marten are located in Mondovi, Wisconsin.   In contrast, there does not appear to be any

evidence pertinent to the issues in this lawsuit located in the Eastern District of Texas.  Consequently, this factor strongly favors transfer.

### B.     Cost of Attendance for Willing Witnesses Favors Wisconsin.

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *In re Genentech*, 566 F.3d at 1342 (Fed. Cir. 2009); *ContentGuard*, Dkt. 472 at p. 19.  The Fifth Circuit has established a "100-mile" rule, which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204-05).

As noted above, Marten employees who are familiar with and are able to testify concerning sales and marketing of Marten products and services are located in Mondovi, Wisconsin.  These witnesses would be substantially inconvenienced by having to travel over 1,000 miles to testify in Marshall, Texas.

Non-party witnesses are located on the East and West Coasts, with no expected witnesses located in the Eastern District of Texas or even the entire state of Texas.  While the Western District of Wisconsin is not overly convenient for these witnesses, they may still travel to Madison, Wisconsin's commercial airport with relative ease.

Eclipse, meanwhile, appears to have no party or non-party witnesses who live or work in the Eastern District of Texas.  As noted above, the listed inventor

for both patents-in-issue in this case, Scott A. Horstemeyer, is located in Atlanta, Georgia, over 630 miles from Marshall, Texas.  Van Camp Decl. Ex. 12.  Notably, direct flights are available from Atlanta to Madison, Wisconsin.  *Id.* Ex. 13.

Eclipse's manager, Pete A. Sirianni III, has residences in Delray Beach, Florida and Hermitage, Pennsylvania, both of which are over 1,000 miles away from the courthouse in Marshall.  *Id.*  Exs. 14, 15.

Further, as stated above, Eclipse has demonstrated a willingness to file and litigate numerous lawsuits in nearly every corner of the country.  Eclipse has litigated 17 lawsuits in Chicago, Illinois alone, less than 150 miles from Madison, Wisconsin.  Eclipse has repeatedly demonstrated that it is not inconvenienced by litigating throughout the country, including on the doorstep of the Western District of Wisconsin.

This factor also weighs heavily in favor of transfer.

**C.    Availability of Compulsory Process to Secure the Attendance of Witnesses.**

This factor concerns the availability of compulsory process to secure the attendance of witnesses, including non-party witnesses whose attendance may need to be secured by a court order.  *See Volkswagen II*, 545 F.3d at 316; *ContentGuard*, Dkt. 472 at p. 22.  This factor appears to be neutral.

**D.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive.**

This factor appears to be neutral.

III.   **PUBLIC INTEREST FACTORS.**

A.   **Administrative Difficulties Flowing from Court Congestion Favors Wisconsin.**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis.  *ContentGuard*, Dkt. 472 at p. 25; *see also In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d at 1347.

According to federal case management statistics for the 12 month period ending December 31, 2014, the median case in the Western District of Wisconsin reaches disposition and trial faster than in the Eastern District of Texas. http://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics.

The most recent report available, for the twelve month period ending on December 31, 2014, indicates that the median time from filing to trial in the Eastern District of Texas is 21.9 months.  *Id*.  In the Western District of Wisconsin, the median time from filing to trial is listed at 19.2 months.  *Id*.  The median time from filing to disposition is listed at 8.3 months in the Eastern District of Texas and 8.1 months in the Western District of Wisconsin.  *Id*.

The last four available reports consistently show that the median civil case resolves faster in the Western District of Wisconsin than in the Eastern District of Texas.  *Id*.  In those four reports, the median time to trial in the Eastern District of

Texas has ranged from 21.3 to 27.9 months.  *Id.*  In the Western District of Wisconsin the range has been 18.8 to 19.8 months.  *Id.*

Given these statistics, it is likely this case would be resolved more expeditiously in the Western District of Wisconsin.  Therefore, this factor favors transfer.

### B.    Local Interest in Having Localized Interests Decided at Home Favors Wisconsin.

This factor considers the interest of the locality of the chosen venue in having the case resolved there.  *ContentGuard* Dkt. 472 at p. 27; *Volkswagen I*, 371 F.3d at 205-06.  The court considers this issue because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*, 2012 WL 462956, at *8 (E.D. Tex. Feb. 13, 2012) (quoting *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004)).  Local interests that could apply to virtually any judicial district in the United States, such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Id.* (citing *Volkswagen II*, 545 F.3d at 318 and *In re TS Tech*, 551 F.3d at 1321).

In *Lake Cherokee*, this court found that even when the Eastern District of Texas had a local interest in the case by virtue of the fact that one of the defendants had an office in the District, the "local interest" factor weighed slightly in favor of transfer where (1) several of the defendants were headquartered in the transferee district; (2) certain of the defendants' employee witnesses and relevant

documents are located there; (3) the defendants had some level of business presence there; and (4) the defendants played a role in the economy there.  *Id*. at *9.

Here, the people of the Eastern District of Texas have no interest in this case.  There appears to be no connection to any persons or businesses based in Texas.  Eclipse appears to have no offices and no presence in the Eastern District of Texas other than its litigation presence.  While Marten trucks pass through the Eastern District of Texas, as they do through virtually every judicial district in the United States, that fact should be disregarded by the court.  *Id*.

Conversely, the Western District of Wisconsin has a substantial interest in resolving this lawsuit.  Marten has deep roots to the economy and people of the Western District of Wisconsin.  Marten's operations, administration, and primary offices are located in the district, and Marten employs hundreds of residents of the Western District of Wisconsin, including all Marten employees who may be able to testify to the issues relevant to this case.  Documents relevant to this lawsuit are located in Marten's facilities within the Western District of Wisconsin.  Marten has a substantial impact on the economy of the Western District of Wisconsin by employing hundreds of local residents and supporting other related local businesses.

The "local interest" factor strongly favors transfer to the Western District of Wisconsin.

### C.      Familiarity of the Forum with the Law that Will Govern the Case.

Both forums are familiar with the laws applicable to this case and both have substantial experience handling patent infringement litigation.   The Eastern District of Texas has never construed the terms of the patents-in-suit and has never made any substantive rulings about the patents-in-suit.  Therefore, neither forum possesses special knowledge related to the specific issues in this case.  This factor is neutral.

### D.      Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law.

There do not appear to be conflicts of law in this case.   This factor is neutral.

## IV.     FACTORS SUPPORT TRANSFER TO WISCONSIN.

The factors in this case demonstrate that the Western District of Wisconsin is "clearly more convenient" than the Eastern District of Texas.  The scenario in this case is similar to the facts presented in *In re TS Tech*, in which venue transfer was found to be warranted.

In *TS Tech*, the Federal Circuit Court of Appeals found that transfer from the Eastern District of Texas to the Southern District of Ohio was appropriate. 551 F.3d at 1318.  Supporting its determination, the court found that the distance of key witnesses from the forum, ease of access to sources of proof, and the local interest factor all favored transfer.  *Id*. at 1320.  The court found other factors neutral.  *Id*.  In the current case, even more factors favor transfer.

16

Regarding witnesses, the fact that all of the identified key witnesses "would need to travel approximately 900 more miles to attend trial in Texas than in Ohio" weighed in favor of transfer in *TS Tech. Id.*

The "ease of access to sources of proof" factor likewise weighed in favor of transfer where "the vast majority of physical and documentary evidence relevant to this case will be found in Ohio, Michigan, and Canada, and none of the evidence is located in Texas." *Id.* at 1321.

Regarding the "local interest" factor, the court cited the following rationale:

> [T]here is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's headrest assembly have been sold in the venue.  None of the companies have an office in the Eastern District of Texas; no identified witnesses reside in the Eastern District of Texas; and no evidence is located within the venue.  Instead, the vast majority of identified witnesses, evidence, and events leading to this case involve Ohio or its neighboring state of Michigan.

*Id.*

The court rejected the contention that the Eastern District of Texas had a "substantial interest" in resolving the case locally because the allegedly infringing products were sold within the District.  *Id.*  The court stated that because the products were sold throughout the United States, "the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *Id.*

As in *TS Tech*, the factors in this case militate in favor of transfer.  Just as the witnesses in *TS Tech* would need to travel approximately 900 more miles to attend trial in Texas than in Ohio, the Marten witnesses in this case would also

need to travel approximately 800 more miles to attend trial in Texas than in Wisconsin.  The non-party witnesses would all need to travel well over 1,000 miles to attend trial in Texas.  For most of those witnesses, travel distance and time would be substantially less to Madison, Wisconsin.

As in *TS Tech*, the vast majority of physical and documentary evidence relevant to this case will be found in or near the transferee district, and none of the evidence appears to be located in Texas.

The "local interest" analysis in this case is the same as in *TS Tech*.  As in *TS Tech*, in this case there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas, while the transferee district, where the defendant is located and employs hundreds of local residents, has substantial interest in the case.  Finally, just as the court in *TS Tech* disregarded the fact that the defendant sold headrests in the Eastern District of Texas, the court in this case should disregard the fact that Marten trucks travel through the Eastern District of Texas, as they do throughout the United States.

The primary difference between the facts in this case and those in *TS Tech* is that even more factors favor transfer in this case.  In *TS Tech*, the court found that the "court congestion" factors was neutral.  As detailed above, that factor weighs in favor of the Western District of Wisconsin in this case.  Just as transfer was appropriate in *TS Tech*, so it is in this case.

18

## CONCLUSION

Based on the foregoing, Marten respectfully requests that its Motion to Transfer Venue to the Western District of Wisconsin be granted.

Dated this 29th day of June, 2015.

Respectfully Submitted,

DEWITT ROSS & STEVENS S.C.

By: /s/ _____

    Harry E. Van Camp (*admitted pro hac vice*)
    Elijah B. Van Camp (*admitted pro hac vice*)
    Two East Mifflin Street, Suite 600
    Madison, WI  53703-2865
    608-255-8891
    hvc@dewittross.com
    evc@dewittross.com

    Joseph T. Miotke (*admitted pro hac vice*)
    DeWitt Ross & Stevens S.C.
    13935 Bishop's Drive, Ste. 300
    Brookfield, WI  53005-6605
    262-754-2840
    jtm@dewittross.com

    Amanda A. Abraham (TX Bar No. 24055077)
    THE ROTH LAW FIRM, P.C.
    115 N. Wellington, Suite 200
    Marshall, Texas 75670
    903-935-1665
    aa@rothfirm.com

    ATTORNEYS FOR DEFENDANT, MARTEN TRANSPORT, LTD.

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on June 29, 2015, counsel for Defendant and Plaintiff complied with the meet and confer requirement in Local Rule CV-7(h).  Elijah B. Van Camp, counsel for Defendant Marten Transport and Matt Olavi, counsel for Plaintiff Eclipse IP conferred by telephone on June 29, 2015.  Eclipse opposes the substance of the motion and Defendant and Plaintiff's discussion regarding the substance of the motion conclusively ended in an impasse, leaving an open issue for this Court to resolve.


/s/_____
Elijah B. Van Camp


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 29th day of June, 2015.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/_____
Harry E. Van Camp